UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELVIN L. WALKER,

   Plaintiff,

Case No. 1:13-cv-349

Hon. Gordon J. Quist

v.

SHAWN BREWER,

   Defendant.
           /

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner incarcerated by the Michigan Department of Corrections ("MDOC") pursuant to 42 U.S.C. § 1983. This matter is now before the court on a motion for summary judgment filed by defendant Shawn Brewer (docket no. 9).

  **I.**  **Background**

Plaintiff's complaint involves incidents which occurred at the Ernest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Michigan against one defendant, Shawn Brewer, identified as the "Inspector" at LRF. Compl. at ¶ 5. Plaintiff's complaint alleged as follows. On or about September 6, 2011, defendant called plaintiff from his work assignment ("MSI Laundry") to the control tower. *Id.* at ¶ 6. Defendant questioned plaintiff "regarding inmates smuggling tobacco and drugs into the institution" to which "[p]laintiff conveyed that he had no knowledge regarding such activity." *Id.* at ¶ 7. As defendant "continued to badger" plaintiff regarding the names of inmates smuggling tobacco and drugs, "[p]laintiff informed [d]efendant that he would be forced to file a grievance if [d]efendant continue[d] to harass him regarding information that [p]laintiff did not have." *Id.* at ¶ 8. Defendant then stated,

> Oh you want to threaten me with grievances and refuse to talk, I'll terminate your ass from your job, and put your name on the package, let's see if you talk then[.] The Michigan State Police will be getting with you[.]

*Id.* at ¶ 9.

The next day, defendant retaliated against plaintiff by "falsifying a 363 work evaluation terminating [p]laintiff from his work assignment." *Id.* at ¶ 10; *See* Prisoner Program and Work Assignment Evaluation ("363 work evaluation") (docket no. 1-1). By way of background, plaintiff alleged that he was making $100.00 per month on his work assignment "which was the highest paying job at the facility." Compl. at ¶ 12. On September 7, 2011, defendant completed the 363 work evaluation, in which he recommended that plaintiff be terminated. *See* 363 work evaluation. Defendant included the following "comments and recommendations" as part of the evaluation:

> Prisoner Walker has been identified as one of multiple prisoners working collectively to introduce drugs to this correctional setting through his current assignment at MSI Laundry. That matter remains under investigation by the Michigan State Police. As this poses a threat to the security of the facility and a risk to the safety of staff and prisoners alike, this prisoner is to be removed from this assignment. As this remains an open investigation, this prisoner will not be taken back on this assignment.
>
> Prisoner can be employed from another pool without public access if/when eligible.
>
> Should this investigation conclude prisoner had active involvement, appropriate action will be initiated through PD 03.03.105 Prisoner Discipline and a referral to the Michigan State Police as appropriate.

*Id.*

Plaintiff alleged that defendant's accusations were false, and that he was not written up on a misconduct or subjected to an administrative hearing on the matter. Compl. at ¶ 13.

Specifically, plaintiff alleged that the "false statements" in the 363 work evaluation included the following:

> Prisoner Walker has been identified as one of the multiple prisoners working collectively to introduce drugs to this correctional setting through his current assignment in MSI Laundry[.] That matter remains under investigation by the Michigan State Police . . .

Compl. at ¶ 10.

On October 18, 2011, plaintiff filed a grievance, LRF 11-10-1819-17i ("1819"). *Id.* at ¶ 11. Plaintiff attached a copy of grievance no. 1819 to his complaint. *See* Grievance No. 1819 (docket no. 1-2). The grievance listed an incident date of October 16, 2011, and claimed that defendant violated his rights under the First and Fourteenth Amendments because defendant falsely labeled plaintiff as a "drug dealer/smuggler" and then retaliated against plaintiff when plaintiff stated that he had no knowledge of or involvement with the smuggling. *Id.* In this grievance, plaintiff claimed that defendant retaliated against him by subjecting him to "harassing Shakedowns and Cell-Searches," and telling plaintiff that "the package of Tobacco confiscated has your name on it and the Michigan State Police will be getting with you," and that "You are now terminated from your assignment." *Id.*

According to plaintiff, on December 12, 2011, he received a response to his Step II grievance from the Warden "who upheld the falsified 363 work evaluation issued by [d]efendant Brewer." Compl. at ¶ 14. While plaintiff states that this document, presumably related to grievance no. 1819 attached as "exhibit A", there is no such attachment to the complaint.[1]

---

[1] The Court notes that "exhibit A" is the 363 work evaluation completed by defendant which appears as docket no. 1-1. While plaintiff's complaint includes a copy of his Step I grievance and the MDOC's response to his Step III appeal to the grievance, the Step II response, upon which plaintiff's retaliation claim is based, is conspicuously absent. *See* Grievance no. 1819 (docket no. 1-2).

According to plaintiff, on or about December 16, 2011, "while in the housing unit [d]efendant Brewer approached [p]laintiff stating that at first he was only going to take [p]laintiff's job, but since [p]laintiff decided to send the grievance to the Warden [i.e., the Step II response], he was going to arrange for [p]laintiff to be sent across mackinaw bridge." *Id.* at ¶ 15. Then, on December 20, 2011, "[d]efendant made good on his threat" and plaintiff was transferred to the Upper Peninsula for filing the grievance against defendant. *Id.* at ¶ 16. Plaintiff then filed a grievance against defendant for a "retaliatory transfer." *Id. See* Grievance No. LRF 11-12-2245-24z (docket no. 1-3).

Plaintiff alleged that defendant retaliated against him in violation of his First Amendment rights when defendant terminated plaintiff from his work assignment and transferred him to the Upper Peninsula. *Id.* at ¶ 17. Plaintiff's requested relief includes "loss of income" from his "high paying job," declaratory relief, injunctive relief "to expunge the falsified 353 work evaluation from all of Plaintiff's records" and other monetary damages. *Id.* at ¶ 19 and p. 11.

## II. Defendant's motion for summary judgment

### A. Legal Standard

Defendant has moved for summary judgment on plaintiff's retaliation claims. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 3 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Plaintiff has alleged two instances of retaliation. First, plaintiff claims he was terminated from his work assignment in retaliation for failing to provide information in the smuggling investigation. Second, plaintiff claims that he was transferred from LRF in retaliation

for filing a grievance. To prove a First Amendment retaliation claim, a plaintiff must establish three elements: "1) the plaintiff engaged in activities protected by the Constitution or statute; 2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) that this adverse action was taken at least in part because of the exercise of the protected conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). *See also Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). "[B]ecause prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, we are careful to require non-conclusory allegations." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (internal quotation marks omitted).

### B. Adverse action[2]

Plaintiff's initial assumption is that his prison work assignment is analogous to employment, and that changes in his work assignment can be viewed as adverse actions upon which he can base a retaliation claim. This assumption is unwarranted. Examples of adverse actions that the Sixth Circuit has held sufficient to meet the "person of ordinary firmness" standard applicable to prisoners include "initiating a retaliatory transfer to another prison when it will result in foreseeable negative consequences to the prisoner, threatening to impose disciplinary sanctions, issuing major misconduct reports that could result in loss of disciplinary credits, and threatening the use of physical force." *Reynolds-Bey v. Harris*, 428 Fed. Appx. 493, 503 6th Cir. 2011) (internal citations omitted).

---

[2] The Court notes that while defendant raised the "adverse action" issue only with respect to plaintiff's transfer, plaintiff asserted in both his complaint and his response that the termination of his prison work assignment was an "adverse action."

Prisoners are not considered "employees" of the MDOC. *See* Policy Directive 05.02.110 ¶ A (eff. 2/25/08) ("Prisoners assigned to work are not employees of the Department and therefore are not eligible to receive workers' compensation or unemployment compensation benefits for their work assignments."). It is well established that a prisoner has no constitutional right to prison employment or to a particular prison job. *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989); *Dobbins v. Craycraft*, 423 Fed. Appx. 550, 552 (6th Cir. 2011). Nor does a prisoner have a right to employment under Michigan law, which gives prison administrators complete discretion regarding prisoner work assignments. *Dobbins*, 423 Fed. Appx. at 552. *See* Policy Directive 05.01.100 ¶ O (eff. 5/30/11) ("[a]ll employable prisoners shall be classified to a work assignment unless assigned to school"). Courts consider prison work assignments to be a condition of confinement. *Choate v. Lockhart*, 7 F.3d 1370, 1373 (8th Cir. 1993) ("[p]rison work assignments are conditions of confinement subject to scrutiny under the Eighth Amendment"); *Jones v. Michigan*, 698 F. Supp. 2d 905, 915 (E.D. Mich. 2010) (same); *Terrill v. Bertussi*, No. 2:05-cv-96, 2005 WL 3277990 at *3-*5 (W.D. Mich. Dec. 2, 2005) (same); *Lee v. Sikes*, 870 F. Supp. 1096, 1099-1101 (S.D. Ga. 1994) (same). Eighth Amendment claims arising from prison work assignments are typically limited to extreme working conditions which a prisoner claims to be cruel and unusual punishment. *See, e.g., Jones v. Campbell*, 25 Fed. Appx. 287, 288 (6th Cir. 2001) (rejecting prisoner plaintiff's Eighth Amendment claim for injuries suffered while working at a recycling center because defendants were at most negligent for creating the dangerous work conditions, and a prisoner "cannot base an Eighth Amendment claim on mere negligence"); *Howard v. King*, 707 F.2d 215, 219-20 (5th Cir. 1983) ( inmates would be entitled to relief based upon

7

allegations that their 56 hour, 7-day work week engaged in field labor caused perpetual exhaustion and physical breakdown).

In addition, prisoners are expected to endure more than the average citizen. *Siggers-El v. Barlow*, 412 F.3d 693, 701-02 (6th Cir. 2005). While the "average citizen" might have certain expectations from being a contract or at-will employee, and relies upon his or her employment to provide for the necessities of life, prisoners, such as plaintiff, do not have a similar expectations or reliance with a prison work assignment. As discussed, prisoners with work assignments are not employees of the MDOC. In addition, unlike the average citizen, plaintiff is in the custody of the state, which provides him housing, food, clothing and medical care. *See* Policy Directive 03.03.130 ¶ A ("Each prisoner shall be assigned to a housing unit upon arrival at a correctional facility"); Policy Directive 04.07.100 ¶ F ("At least three meals shall be served to offenders at the facility at regular meal times during each 24-hour period with no more than 14 hours between the evening meal and breakfast, except during an emergency when it is not possible to serve a meal. However, on weekends and holidays, only two meals may be served during each 24-hour period (e.g., 'brunch' and evening meal) with approval of the Warden[.]"); Policy Directive 04.07.110 Policy Statement ("Prisoners . . . shall be provided state-issued items, including clothing, and provided cell/room furnishings to provide for their basic needs while incarcerated"); Policy Directive 03.04.100 ¶ E ("All prisoners. . . shall have access to health services as described in this policy, regardless of custody level or security classification. A prisoner whose health care needs cannot be met at the facility where the prisoner is housed shall be transferred to a facility where those needs can be met. . .").

In *Siggers-El*, 412 F.3d at 701-04, the Sixth Circuit briefly addressed how prison work assignments fit within the context of an alleged retaliatory transfer. The Court observed that the transfer of a prisoner to a different facility could be an adverse action sufficient to support a retaliation claim where the foreseeable consequences from that transfer inhibited the prisoner's ability to access the courts. *Id.* In *Siggers-El*, the prisoner had agreed to pay an attorney $300.00 to review an appellate brief related to a criminal conviction. *Id.* at 697. Under these circumstances, the foreseeable consequences of his particular transfer included the loss of "his high paying job" needed to pay the attorney coupled with the fact that his transfer to a different facility "made it more difficult for his attorney to visit with or represent him because he was moved further away from [his attorney]." *Id.* at 697, 702. The Sixth Circuit found the loss of the prison work assignment significant because plaintiff had demonstrated that the loss of the income from the assignment could adversely affect his ability to access the court in a pending appeal. *See id.* at 702 ("In this case, however, the transfer would deter a person of ordinary firmness from engaging in protected conduct, since here, the [Plaintiff] was not only transferred, but also suffered a number of foreseeable consequences that inhibited the Plaintiff's ability to access the courts."). Here, however, plaintiff has failed to allege that the foreseeable consequences from the changes in his prison work assignment interfered with his ability to access the court.

Defendant's termination of plaintiff's work assignment was not an adverse action for purposes of establishing a retaliation claim. *See Jewell v. Leroux*, 20 Fed. Appx. 375, 377 (6th Cir. 2001) (finding no adverse action where the plaintiff prisoner alleged that he had been wrongfully removed from a prison job and transferred to another prison in retaliation for filing grievances); *Cohron v. City of Louisville*, No. 3:06cv-P570-C, 2010 WL 1049975 at *3 (W.D. Ky. March 19,

2010 (plaintiff inmate's removal from the work list did not constitute an adverse action for purposes of a retaliation claim). Accordingly, defendant is entitled to summary judgment on that claim.

Similarly, plaintiff's transfer to another correctional facility, in and of itself, is not an adverse action. "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El*, 412 F.3d at 701-02. *See Jewell*, 20 Fed. Appx. at 378 ("A transfer to the general population of another prison is not considered sufficiently adverse to deter a person of ordinary firmness from exercising his First Amendment rights."). *Cf. Olim v. Wakinekona*, 461 U.S. 238, 245 (1983)("an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State"); *Meachum v. Fano*, 427 U.S. 215, 228 (1976) ("[w]hatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all").

Plaintiff has not alleged any adverse foreseeable consequences related to his transfer which rise to the level of a constitutional violation such as interfering with his access to the courts. *See Siggers-El*, 412 F.3d at 701-02. While plaintiff complains that his transfer will make family visits more difficult, such an inconvenience does not rise to the level of a constitutional violation. Plaintiff has failed to allege that there were foreseeable consequences to his transfer which were so adverse and exceptional as to transform a transfer to another correctional facility into a retaliatory action. Accordingly, defendant is entitled to summary judgment with respect to both of plaintiff's retaliation claims.

### C. Plaintiff has failed to demonstrate the causation element of his retaliation claims

Even if plaintiff had alleged that he suffered adverse actions, defendant is entitled to summary judgment because plaintiff has not demonstrated the causation element of his retaliation claims. To establish the causation element of a retaliation claim, "the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith*, 250 F. 3d at 1037, *citing Mount Health City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977). "After a plaintiff shows that his protected conduct was a motivating factor in the defendant's action, the defendant may thwart the retaliation claim by showing that it would have taken the same action even without the protected activity." *Thomas v. Eby*, 481 F.3d 434, 441-42 (6th Cir. 2007).

#### 1. Defendant's investigation

Defendant contends that based upon the August 8, 2011 Michigan State Police Original Incident Report ("MSP Report"), plaintiff was suspected of using his work assignment to engage in criminal activity and that defendant would have taken the same action with any prisoner listed in such a report, regardless of whether the prisoner had filed a grievance. Contrary to defendant's contention, it appears to the Court that issues of fact exist with respect to whether the MSP Report justified an ongoing investigation of plaintiff. According to the MSP Report, a credible and reliable source had provided information "that a quantity of heroin was going to arrive at the Brooks Correctional Facility on the date and time below [i.e., August 8, 2011 at 0800] on a truck bringing laundry from the Veteran's Hospital in Grand Rapids." MSP Report (docket no. 15-3). The report continued:

> Contact was made with both trucks coming from the veterans home at the rest area in Fruitport. The trucks were then taken to the warehouse outside of Brooks Correctional Facility.
>
> Several items of dirty laundry were searched by WEMET detectives, Troopers from the MSP Grand Haven Post and MDOC personnel.

*Id.* However, "[n]o contraband was located in the laundry, carts or trucks." The names of the suspected prisoners, Kenneth D. Lacey and Melvin Lee Walker, were provided to defendant for follow up. *Id.* The MSP Report concluded with the following notation: "STATUS: Unfounded." *Id.*

Based on this record, issues of fact exist as to whether the "unfounded" MSP Report from August 8, 2011 would support a follow-up investigation of plaintiff one month later. In this regard, the record is unclear as to how suspected (but unfounded) heroin smuggling in August 2011 would lead to a confrontation between plaintiff and defendant for suspected tobacco smuggling in September 2011 and defendant's recommendation that plaintiff be terminated from his prison work assignment. Clearly, this situation involves facts in addition to those presented to the Court. However, any such factual issues are not sufficient to defeat defendant's motion, because defendant lacked the authority to retaliate against plaintiff by either terminating a work assignment or transferring plaintiff to a different correctional facility. *See* discussion, *infra*.

### 2. Defendant lacked authority to terminate plaintiff from a work assignment

In his affidavit, defendant states that in his capacity as the Inspector at LRF he "did not have the authority to approve or terminate work assignments." Brewer Aff. at ¶ 12 (docket no. 10-2). Therefore, he could not be liable for any claim related to the termination. *See Shehee v. Luttrell*, 199 F.3d 295, 300-01 (6th Cir. 1999) (defendant Bureau of Prisons employees were not

liable for a federal inmate plaintiff's claim that they terminated a prison work assignment where the defendants "neither fired nor had the authority to fire" the inmate from the assignment). While defendant states that he lacked authority "to approve or terminate work assignments," the record reflects that he did sign off as the "evaluator" on plaintiff's 363 work evaluation which recommended plaintiff's "termination" as of September 7, 2011. *See* 363 work evaluation. This record suggests that defendant, in his role as Inspector at LRF, had the authority to evaluate and recommend the termination of prison work assignments. Similarly, defendant's comment/recommendation that plaintiff "can be employed from another pool without public access if/when eligible" is further evidence that defendant played some role in prison work assignment decisions. *Id.*

In his reply brief, defendant clarified that while he provided a recommendation regarding plaintiff's removal from the MSI Laundry position and reassignment to another work pool, the actual decision to place or remove a prisoner from a work assignment is that of the facility's Classification Director. Defendant's Reply at pp. 2-3. In this regard, MDOC Policy Directive 05.01.100 ¶ GG provides that ""[w]hen termination from a work or school assignment is necessary, the recommendation shall be submitted by the assignment supervisor using a Prisoner Program and Work Assignment Evaluation and forwarded to the Classification Director." Defendant points out that the recommendation is sent to the Classification Director pursuant to MDOC Operating Procedure 05.01.100 LRF, Program Classification of Prisoners at ¶ A which provides that:

> The Classification Director will have authority for final decisions subject only to review by the Warden when he/she deems necessary with exception of school programs. No prisoner will be placed on an assignment or be removed from an assignment without the Classification Director's approval. . .

13

*See* MDOC Operating Procedure 05.01.100 LRF (docket no. 15-5). In addition, the MDOC Prisoner Program Classification Manual provides that "[t]he Classification Director has final authority for all program assignment and removal, subject only to review by the Warden or Central Office Administration." MDOC Prisoner Classification Manual at ¶ B.1. (docket no. 15-6). Based on this record, while defendant could recommend that plaintiff be terminated from his prison work assignment or placed in a different prison work assignment, he lacked authority to terminate or re-assign plaintiff. Accordingly, defendant is entitled to summary judgment on plaintiff's retaliation claim related to his prison work assignment.

### 3. Defendant lacked authority to transfer plaintiff to another correctional facility

Plaintiff's retaliatory transfer claim arises from defendant's alleged remarks on December 16, 2011 that he was going to arrange for plaintiff to be sent across the Mackinaw Bridge, i.e., transferred to a correctional facility in Michigan's Upper Peninsula. In his affidavit, defendant: denied that he told plaintiff that he was going to transfer him "across [the] mackinaw bridge"; denied that he was involved in plaintiff's transfer from LRF; and stated that he did not have the authority to transfer a prisoner to another correctional facility. Brewer Aff. at ¶ 13. In an affidavit opposing the motion for summary judgment, plaintiff asserts that the defendant made these statements to him. *See* Walker Aff. at ¶ 16 (docket no. 13-2).[3] Viewing the facts in the light most favorable to the non-

---

[3] Plaintiff also relies on the allegations in his verified complaint that defendant made such statements shortly before his transfer. *See* Walker Affidavit at ¶ 16. A verified complaint has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993). However, plaintiff's complaint was not verified under 28 U.S.C. § 1746 as he submits. Verified statements under § 1746 must be made in substantially the following form "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)". 28 U.S.C. § 1746(2). Here, plaintiff did not declare that his statements were "true and correct" as required by the statute, but diluted that language, stating "that the foregoing is true and correct *to the best of my knowledge, information and belief*." Compl. at p. 10. Such allegations based on "belief" lack the

14

moving party (plaintiff), and assuming for purposes of this motion that defendant made these statements, defendant could not retaliate against plaintiff because he lacked the authority to carry out such a transfer.

Defendant has provided a copy of the transfer order which authorized plaintiff's transfer from LRF to Chippewa Correctional Facility (URF) in Kincheloe, Michigan. *See* Transfer Order (docket no. 10-3). The transfer order was prepared by LRF Transfer Coordinator Patricia Benson and signed by LRF Warden Berghuis on December 19, 2011. *Id.* The comments to the order states:

> URF request trade to send Level II prisoner's to LRF. LRF-SCC recommends transfer due to bedspace needs and to accommodate trade with URF.

*Id.* The transfer was approved by Correctional Facilities Administration (CFA) Transfer Coordinator Bernard Scott. *Id.*; Defendant's Brief at pp. 8-9. There is no evidence that defendant authorized the transfer order, which, on its face, appears to be a routine order involving the transfer of prisoners between two correctional facilities. Accordingly, defendant is entitled to summary judgment on this retaliation claim.

---

personal knowledge sufficient to support a motion for summary judgment. *See Alpert v. United States*, 481 F.3d 404, 409 (6th Cir.2007) (holding that the affiant's "statement. . . based upon his 'belief'. . . did not demonstrate the personal knowledge" sufficient to create a genuine issue of material fact in a summary judgment proceeding); *Pace v. Capobianco*, 283 F.3d 1275, 1278 (11th Cir. 2002) (the "personal knowledge requirement [of Rule 56] prevents statements in affidavits that are based, in part, 'upon information and belief' - instead of only knowledge - from raising genuine issues of fact sufficient to defeat summary judgment"); *Dellacava v. Painters Pension Fund of Westchester and Putnam Counties*, 851 F.2d 22, 27 (2d Cir.1988) (statements in an affidavit made "upon information and belief" have "no probative value and may not be considered in a motion for summary judgment").

### III. Recommendation

For the reasons set forth above, I respectfully recommend that defendant's motion for summary judgment (docket no. 9) be **GRANTED** and that this action be **DISMISSED**.


Dated:  February 24, 2014                               /s/ Hugh W. Brenneman, Jr.
                                                        HUGH W. BRENNEMAN, JR.
                                                        United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).